Bennett's Heirs *v.* M. D. C. Alexander, Administratrix and Tutrix.

Where heirs at law bring a suit to recover from the administrator of the succession of their deceased ancestor, the price paid for the property of the succession, at a sale made by order of court, although in the petition they may claim to be recognized as heirs, yet their action is a personal one.

Where the property of a succession has, by order of court, been sold and the money paid into the hands of the administrator, although such administrator, on account of the fiduciary and quasi official relation which exists on his part towards the court and succession, cannot prescribe against the demands of the heirs, yet the heirs of such administrator, after his death, are entitled to the plea of prescription. Prescription, therefore, commences to run in favor of the heirs of the administrator, from the death of the latter.

APPEAL from the District Court of the Parish of Caddo, *Creswell,* J. *Roland Jones* and *James W. Duncan,* for plaintiffs and appellants. *A. B. Levisee & L. M. Nutt,* for defendant.

Merrick, C. J. "The petition sets forth, that *Nancy Bennett,* of Lewis county, New York, *Abagail Bennett, John Bennett* and *David Bennett,* of North Ward, Rockingham county, New Hampshire, *Ebenezer Bennett,* of Lee, Stafford county, in said State, *Seymore E. Bennett,* and *Caroline D. Bennett,* of Franklin county, State of Alabama, with *Sarah Cooley,* of Tuscumbia, in said State, are the only heirs at law of *Rebecca B. Bennett,* who was the wife of *James H. Cane,* deceased, and that each one of the aforesaid persons, represent one share in said *Rebecca B. Cane's* succession, except *Seymore E. Bennett* and *Caroline D. Bennett,* who represent one interest, to-wit: the interest of *Jeremiah Bennett* deceased."

"That said *Rebecca B. Bennett* died, and her succession was opened in the parish of Caddo, in the year 1838, and that *James H. Cane,* her husband, was appointed administrator of the same."

"That an inventory was taken of the property held in community between the said *Rebecca B. Cane* and her husband, the said *James H. Cane,* on the 9th of April, 1838, and the same was appraised at the sum of twenty-one thousand, six hundred and sixty-five dollars, ($21,665.) That on the petition of the said *James H. Cane,* administrator and partner in the community, said property was sold by order of court on the 15th day of May, 1838, for cash, and *Samuel Bennett* became the purchaser thereof, for the sum at which it was appraised as aforesaid; one-half of said sum, to-wit: ten thousand, eight hundred and thirty-two dollars and fifty cents, ($10,832 50-100,) being the share of the succession of the said *Rebecca B. Cane* in said sum."

"That said amount is now due and owing to petitioners as heirs at law of said *Rebecca B. Cane,* from the succession of the said *James H. Cane.*"

"That *James H. Cane* died in the year 1846, and his succession was opened in the parish of Bossier, and *Mary D. C. Bennett,* now *Alexander,* who was the wife of the said *Cane,* was appointed administratrix of his succession and tutrix of his only child, who is yet a minor."

"The petition concludes with a prayer for judgment against the said *M. D. C. Alexander,* in her aforesaid capacity, for the sum of ten thousand, eight hundred and thirty-two dollars fifty cents, ($10,832 50-100,) with five per cent. interest from the 15th day of May, 1838, until paid; to be recognized as heirs of *Rebecca Cane,* whose succession they accept. Petitioners further pray that *M. D. C. Alex-*

BENNETT
v.
ALEXANDER.

*ander* be ordered to file an account of said succession, and for all orders necessary in the premises and for general relief."

"The defendant pleads a general denial, and the prescriptions of 3, 5, 10, 15 and 20 years, and all other prescriptions applicable, and for trial by jury."

"A trial by jury was refused."

"Plaintiffs show that *James H. Cane* was appointed administrator 10th April, 1838, and *Samuel Bennett*, attorney of absent heirs. The community property was inventoried and appraised at $21,665. All of said property was sold at public auction by the parish judge, and adjudicated to *Samuel Bennett*, for the sum of $21,665, on the 15th May, 1838."

"It is admitted that plaintiffs, together with *Sarah Cooley*, *Samuel Bennett* and *William S. Bennett*, were at his death the only legal heirs of *Rebecca Cane*."

"It does not appear that *Cane* ever filed an account of his administration. It does not appear that plaintiffs were ever advised of their rights by the attorney of absent heirs. It does not appear that the administrator caused the publications to be made, required by Article 1127 C. C."

"The foregoing are the only material facts and allegations in the record. The judgment of the District Court was, as in case of *nonsuit*."

"But two points are presented for consideration."

"I. Is this action prescribed?"

"II. If not, are plaintiffs entitled to a judgment for the interest, as well as the principal, claimed by them?"

It will only be necessary to consider the first of these questions. And in order to ascertain whether prescription has been acquired by the defendant, it is necessary to ascertain the nature of the action.

The plaintiffs contend that it is in the nature of an action of revendication for an entire succession and not properly a personal action.

It is true, that the plaintiffs pray to be recognized as heirs of *Rebecca Cane*, deceased. But this might have been done on simple petition in the probate court, and it can in no manner affect the character of the suit, for they must accept the inheritance, as well to bring a suit for a sum of money, as for an immovable, or the entire succession.

Looking to the allegations and prayer of the petition we find the action is a personal one. The defendants are called upon to account for moneys received in a fiduciary capacity by their ancestor, on account of the succession of *Rebecca Cane*, deceased, and a judgment for $10,832 50, in money, is demanded against them. No one thing (much less the collection of things,) which belonged to the succession of *Rebecca Cane* is demanded. The defendants, if liable at all, are liable for so much money as their ancestor may have made by sales of property, the proceeds of which he had not disbursed.

But it is contended in the elaborate brief of plaintiffs' counsel, that *James H. Cane* could not during his life-time plead prescription, and that, therefore, his heirs cannot plead it after his decease.

This argument is not conclusive. The reason why *James H. Cane* could not acquire prescription while he lived, was, that he was, in virtue of his letters of administration and quasi office, a party to a proceeding pending in court, *in the parish of Caddo*, and at all times subject to the rules and motions which might be made in a succession under administration. When he died this relationship ceased. His succession was opened in the parish of Bossier, and all demands for money, even on account of his administration of the succession of *Rebecca Cane*, were cognizable

by the court of the parish of Bossier. His heirs had no right to letters of administration upon the succession of *Rebecca Cane* and stood towards it as strangers. The fiduciary, and quasi official, relation which existed on the part of the ancestor towards the court and succession of *Rebecca Cane*, did not descend to the heir. The latter, not being a party to the mortuary proceedings in Caddo, was not bound by their pendency. He stood as his ancestor would have stood had he been removed or discharged on the rendition of an account. Prescription, therefore, commenced to run from the death of *James H. Cane* in 1846, and this suit was not commenced until September, 1858, thus giving place to the ten years prescription. The cases of *Wilson* v. *McGreal*, 12 An. 357, and *Deranco* v. *Montgomery*, 13 An. 513, appear to us to be decisive of this controversy.

The defendants pray, that the judgment be amended in their favor, so as to make the same final. The proof justifies the prayer.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be amended, and that there be final judgment in favor of the defendant and against the plaintiffs' demand, and that the plaintiffs pay the costs of both courts.